UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TELEBRANDS CORP., <br><br> Plaintiff, <br><br> v. <br><br> HARVEST DIRECT, LLC, HARVEST TRADING GROUP, INC., and YEISER RESEARCH & DEVELOPMENT LLC, <br><br> Defendants. | Civ. Action No. 17-00328 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter was opened to the Court through Plaintiff Telebrands Corp.'s ("Plaintiff" or "Telebrands") request to proceed with expedited discovery. The discovery concerns an advertisement for the Metal Garden Hose (the "Original Ad") by Defendants Harvest Direct, LLC, Harvest Trading Group, Inc., and Yeiser Research and Development LLC's (collectively "Defendants"). Also pending before the Court is Plaintiff's motion for reconsideration of the denial of Plaintiff's request for temporary restraints and a preliminary injunction. D.E. 35. Subsequent to the Court's expedited discovery scheduling order, Defendants ceased airing the Original Ad and began showing a different advertisement (the "New Ad"). For the reasons discussed below, the Court finds that the New Ad is materially different from the Original Ad and that Plaintiff must file an amended complaint if it wishes to assert claims regarding the New Ad. Additionally, the Court denies Plaintiff's motion for reconsideration.

**I.  BACKGROUND**

This matter concerns Plaintiff's allegations that Defendants' advertisement of its Metal Garden Hose depicts Plaintiff's expandable hose product -- known as the Pocket Hose -- bursting, leaking, and/or exploding in a false manner that misleads consumers about the integrity and durability of the Pocket Hose. Plaintiff filed a motion for a temporary restraining order ("TRO") and a preliminary injunction ("PI") to stop Defendants from airing the Original Ad and for expedited discovery. D.E. 6. The Court denied Plaintiff's request for a TRO and PI but ordered expedited discovery. D.E. 30. Subsequently, Defendants voluntarily stopped airing the Original Ad, replacing it with the New Ad. The Court held a telephone conference[1] to address the status of the case in light of the New Ad. During that call, and in letters subsequently submitted to the Court, Plaintiff represented that it would like to proceed with the expedited discovery schedule, which Plaintiff maintains should encompass the alleged false advertising in the New Ad. D.E. 44 at 1. Defendants objected and argued that if Plaintiff wishes to proceed on an expedited basis, it must amend its Complaint and file a new motion for a TRO and PI specifically addressing its concerns with the New Ad. D.E. 46.

Because the parties are fully familiar with the content of the Original Ad and New Ad, the Court need not explain each in great detail. The material differences between the two Ads are as follows: (1) the colors of the hoses in the opening scene have changed; the New Ad does not contain a bright green expandable hose (Plaintiff had originally contended that the color would lead consumers to reasonably believe that it was Plaintiff's expandable hose), (2) the way that the hoses fail in the opening scene has been varied; the plastic liner of the hoses in the New Ad do not "balloon up" and explode like they did in the Original Ad; also the there appears to be

---

[1] During the telephone conference, Defendants advised that they were permanently discontinuing the Original Ad. If the current situation was one in which Defendants voluntarily withdrew the Original Ad but nevertheless intended to re-air it, the Court's decision would be different.

2

only a single puncture in the leaking hose in the New Ad, whereas there were multiple punctures in the Original Ad and (3) the color of the competitor's hose in the "kink test" has changed; in the Original Ad the competitor's hose is bright green, whereas the competitor's hose in the New Ad is tan. There are other differences as well, such as the manner in which the hoses fail when being handled by different women in the ads and the way in which the hoses fail when coming in contact with what appear to be rose bushes.

## II. LAW AND ANALYSIS

### A. The Discovery Order

The Court could not find, nor did the parties cite to, any cases addressing the current situation, that is, a matter in which the object of the original Complaint (here the Original Ad) which resulted in expedited discovery was replaced with a different object (here the New Ad) while discovery was ongoing. As a result, the Court looks to an analogous area of law for guidance. In the context of dissolving a preliminary injunction, the Third Circuit has held that "[m]odification of an injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable." *Favia v. Indiana Univ. of Phila.*, 7 F.3d 332, 337 (3d Cir. 1993); *see also Franklin Twp. Sewerage Auth. v. Middlesex Cty. Utilities Auth.*, 787 F.2d 117, 121 (3d Cir. 1986) (holding that "[t]he standard that the district court must apply when considering a motion to dissolve an injunction is whether the movant has made a showing that changed circumstances warrant the discontinuation of the order").

Here, Plaintiff takes issue with the following segments of the New Ad: the "exploding and expandable hoses and narration in the first scene and the 'kink test' scene." D.E. 44 at 2 (footnote and internal citations omitted). The Court finds that Plaintiff's concerns are more

3

appropriately addressed by amending the Complaint, rather than proceeding with expedited discovery, because the New Ad is materially different than the Original Ad. As a result, much of the evidence that Plaintiffs relied upon in seeking (and the Court granting) expedited discovery is no longer relevant.

First, there is no longer a "distinctive, bright green hose" (the color that Plaintiff claims consumers identify as the Pocket Hose (D.E. 6-1 at 2)) in the commercial. The bright green hose that was used in the opening scene of exploding hoses and in the "kink test" has been removed and replaced with hoses of different colors. Thus, there is less of chance that customers viewing the New Ad will associate the hoses being shown as being Plaintiff's Pocket Hose. The bright green color of the hose in the Original Ad was a main point of contention raised by Plaintiff. Plaintiff must re-plead to explain why it is entitled to relief in light of the fact that the product appearing to be its Pocket Hose has been removed from the New Ad. Plaintiff may have a plausible position, but it is not addressed in the current Complaint.

Second, the New Ad depicts the expandable hoses failing in a materially different way than the Original Ad. In the New Ad, the plastic liners in the hoses do not "balloon up" through the outer casing and explode like they did in the Original Ad. Instead, the hoses appear to burst in a distinct location causing pressurized water to explode out. The question of whether the New Ad accurately depicts the way expandable hoses allegedly fail is now a different inquiry from that presented with the Original Ad.

Third, as noted, there are other differences as well between the Original Ad and the New Ad. The differences include the manner in which the hoses fail when being handled by different women in the ads and the way in which the hoses fail when coming in contact with what appear to be rose bushes. These differences may, or may not, be material, but the Court cannot make

such a finding without additional evidence from the parties. For example, when the hose fails and the woman is sprayed in the New Ad (at approximately 10 seconds into the advertisement), the failure appears to stem from a single puncture in the hose rather than apparently several punctures as displayed in the Original Ad. Moreover, in the New Ad, the hose appears to be a traditional garden hose rather than one comparable to Plaintiff's product.

Finally, there is no longer a basis to proceed with expedited discovery on the Original Ad because it is no longer being aired by Defendants. Once the Original Ad was removed from the air, any potential threat of irreparable harm to Plaintiff from the Original Ad was eliminated. If Plaintiff still believes it was harmed by the Original Ad, it may seek relief through the traditional (non-expedited) litigation process. However, if Plaintiff believes that the New Ad entitles it to injunctive relief, expedited discovery, or both, it will have to proceed through an amended complaint that adequately addresses the New Ad.

The Court's focus is on the material differences between the Original Ad and the New Ad. If the New Ad merely changed the narrator's voice, the font of the displayed print, eliminated some non-controversial portion, or made some other unimportant change, the Court would permit expedited discovery to proceed. The Court considers the current issue analogous to changed circumstances regarding a preliminary injunction.

For those reasons, the Court finds that the removal of the Original Ad and airing of the New Ad constitutes changed circumstances warranting the dissolution of the expedited discovery Order. If Plaintiff wishes to pursue claims pertaining to the New Ad, it should do so by filing an amended complaint in accordance with the Federal and Local Rules of Civil Procedure.

**B.** **The Motion for Reconsideration**

In the District of New Jersey, motions for reconsideration are governed pursuant to Local Civil Rule 7.1(i). The rule provides that such motions must be made within 14 days of the entry of an order. Substantively, a motion for reconsideration is viable when one of three scenarios is present: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Carmichael v. Everson*, No. 03-4787, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004) (citations omitted). A motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, *2-3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

Here, Plaintiff does not identify any new facts or change in the controlling law that would warrant granting its motion for reconsideration. In its moving papers, Plaintiff cites to only one case, *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 194 (3d Cir. 2014), which was considered and analyzed by the Court in its oral ruling on February 23, 2017. Additionally, Plaintiff presents no new facts that were previously unavailable at the time of the Court's decision. Instead, Plaintiff argues that the Court overlooked its own factual findings and misapplied those facts to the law. In essence, Plaintiff is attempting to re-argue its motion for a TRO and PI. A motion for reconsideration, however, does not entitle a party to a second bite at the apple.

More importantly, Plaintiff's motion for reconsideration is moot because the Original Ad is no longer being aired by Defendants. Plaintiff's Complaint and motion for a TRO and PI were targeted at the allegedly false advertising taking place in the Original Ad. The relief sought by Plaintiff was a TRO and PI "enjoining Defendants from displaying, sharing, selling, or otherwise

making public" the Original Ad. D.E. 6-1 at 14. Now that the Original Ad is no longer being shown to the public, Plaintiff's request for emergent relief concerning that ad is moot. And, as noted above, the New Ad is materially different from the Original Ad.

For those reasons, Plaintiff's motion for reconsideration is denied.

### III. CONCLUSION

For the foregoing reasons, the Court's discovery Order is vacated. Plaintiff's motion for reconsideration is denied. An appropriate Order accompanies this Opinion.

Dated: April 6, 2017

                                            John Michael Vazquez, U.S.D.J.